UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES LUNDY,

        Plaintiff,

                                    Case No.12-cv-10965

vs.                                 HON. GERSHWIN A. DRAIN

CITY OF PONTIAC, a municipal corporation,
*et al.*

        Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#45]

### I.  INTRODUCTION

This lawsuit arises out of Defendants' alleged violations of Plaintiff's federal constitutional rights as secured by the Fourth and Fourteenth Amendments to the United States Constitution. Consequently, Plaintiff argues he has viable claims for damages under 42 U.S.C. §1983 because the arresting officers used excessive force in arresting him. Plaintiff has other federal claims and also alleges he has viable state law claims. These claims are presently before the Court on Defendants' FED. R. CIV. P. 56 Motion for Summary Judgment[1]. Plaintiff has responded to Defendants' motion.  For the reasons

---

[1] The Court notes that Defendants have moved for Summary Judgment under Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 56. Rule 12 of the Federal Rules of Civil Procedure is not applicable at this stage of the case due to Defendants' multiple filings that require the Court to consider matters outside of the pleadings. The Court is constrained to consider the motion as provided for by Rule 56. *See* FED. R. CIV. P. 56.

stated below, the Defendants' Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART. This Opinion and Order sets forth the Court's ruling.

## II.  FACTUAL BACKGROUND

During the late evening of June 9, 2010, Plaintiff states he was on the porch of his home with his neighbor, Jose Santiago, drinking alcohol at approximately 11:00 p.m., when a car slowly approached and fired a shot in the air.

Shortly thereafter, Pontiac police dispatch received a call that a bald, black male was standing in the driveway shooting a gun.

Officer Donald Russell ("Russell") was the first officer to arrive on the scene. Russell parked his vehicle away from Plaintiff's residence so that Russell could conduct surveillance.  Russell had a clear view of Plaintiff and Jose Santiago as they stood in the driveway. Approximately two minutes later, Russell was joined at his location near Plaintiff's residence by fellow officers Robert Elinski ("Elinski"), Kyle Hayes ("Hayes"), and Damon Dorkins (collectively "Defendant Officers").

The Defendant Officers devised a plan for approaching Plaintiff and Santiago who, at the time, stood outside in the driveway of Plaintiff's home. The plan called for Dorkins and Harris to approach from the west while in a police vehicle, and Elinski and Harris were to approach on foot from the east.

Plaintiff, at the time, was on a tether mandated by a work release program.  Plaintiff was prohibited from drinking alcohol while on the program. Plaintiff saw the police vehicle that contained Dorkins and Harris approach him and Santiago where they stood in the driveway. However, the parties disagree on the events that occurred after Plaintiff saw the

police car approach.

Plaintiff contends that after he saw the police coming towards him, he ran up the driveway toward the back of the house. Plaintiff maintains that he did not hear any verbal commands as he "proceeded" up the driveway towards the back of the house. *See* Dkt. No. 59, pg. 12. Plaintiff states, after he turned the corner at the end of the driveway, he observed Dorkins with his gun drawn and aimed in his direction. Plaintiff alleges he was unarmed with his hands empty when he stopped – after he saw Dorkins with a gun drawn – and he turned towards Dorkins, putting both of his hands up and stating, "Don't shoot!" Plaintiff argues that while his hands were raised, he saw a flash from Dorkins's gun and heard a pop as Dorkins pointed the gun at him. Plaintiff contends he ran away after Dorkins shot at him because he was in fear for his life.

Defendants' version of the events that happened after Plaintiff saw the police car approach are quite different. Defendants contend that Dorkins and Harris shined a police spotlight on Plaintiff and Santiago. Harris then got out of the police vehicle and allegedly stated, "Police. Don't move. Show your hands." *See* Dkt. No. 45, pg. 10. Defendants contend that Dorkins also gave Plaintiff and Santiago similar instructions upon exiting the police vehicle. Defendants argue that Plaintiff ran up the driveway, toward the back of the house. Officer Dorkins gave chase, while Harris remained behind with Santiago. Officers Russell, Hayes, and Elinski also gave chase while running up a neighboring driveway.

Defendants maintain that while Dorkins chased Plaintiff, Dorkins ordered Plaintiff, "Police! Stop!" Dorkins briefly lost site of Plaintiff when Plaintiff turned behind the home. Dorkins contends that when he rounded the corner, Plaintiff had a dark-colored gun in his hand. Defendants contend that Plaintiff fired the gun at Dorkins, and Dorkins heard the shot

and saw the flash. Dorkins alleges he did not return fire because he heard an additional gunshot, not realizing who made the second shot or where it was coming from, Dorkins retreated behind a truck.

Contrarily to what Defendants allege in their brief, the transcript of the preliminary exam notes that officer Dorkins did return fire, as evidenced by his statement, "I went to comeback up again. At that point, returned fire and I heard another shot." However, Defendants contend that in Dorkins's deposition testimony, after Dorkins listened to the audio recording of the said testimony, he realized that his testimony was actually, "At that point, I went to return fire." *Id.* at pg. 12

Contemporaneously, as Dorkins pursued Plaintiff, Russell, Elinski, and Hayes, were also pursuing Plaintiff as the officers ran up a neighboring driveway. Plaintiff contends that Russell had his shotgun drawn  with the safety off and Russell fired the gun immediately upon seeing Plaintiff without any verbal commands uttered. Defendants, however, recall Elinski yelling, "Police! Stop!" as Plaintiff looked over his shoulder and continued running. Elinski contends he fired two shots at Plaintiff because he was in fear for his own safety and the safety of the other officers.

Plaintiff alleges that Defendants have conflicting stories of how the gun was found near the fence. Officer Dorkins stated in the Officer's reports, that he observed Plaintiff jump over a six-foot fence while fleeing from the Defendant officers and that he witnessed Plaintiff throw the gun over the fence. Dorkins then stated to the detectives investigating the incident that he observed Plaintiff throwing the gun over the six-foot fence. Other officers from the scene corroborated Dorkins's statement that Plaintiff threw the gun over the fence.

-4-

Plaintiff states that his tether contained a Global Positioning Tracker ("GPS") that shows that he never went toward the fence, he never had a gun or shot a gun, and that he was never in the vicinity of the fence. A gun, which Defendants later claim was Plaintiff's, was found near the six-foot fence.

Defendants now move to summarily dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 56(c). Defendants claim that Plaintiff's Complaint does not allege genuine issues of material facts that warrant jury review.

### III.  ANALYSIS

### A.  Standard of Review

Federal Rule of Civil Procedure 56(a) empowers the court to render summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice.  The procedure is not a disfavored procedural shortcut.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty*

-5-

*Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

## B. Motion for Summary Judgment

### Count I: Excessive Force under 42 U.S.C. §1983
### a. Has Plaintiff Established a Constitutional Violation?

Defendants claim that excessive force was not used against Plaintiff, and, alternatively, if excessive force is found, they are entitled to qualified immunity. The United States Supreme Court, in *Saucier v Katz*, 533 U. S. 194, 201-02 (2001), noted that for

evaluations of claims for excessive force, the court must first decide whether – taking the facts in the light most favorable to Plaintiff – Defendants' conduct violated a constitutional right. If the answer to the first threshold question is yes, the next step is to determine whether the right was clearly established. *Katz*, 533 U.S. at 201-02. If the court finds that there was no constitutional violation, then the need for the qualified immunity analysis is no longer necessary. *Id.* at 201.

Plaintiff contends that his Fourth Amendment rights were violated by Defendants. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . . ." *U.S. Const. amend IV.* In both *Tennessee v. Garner*, 471 U.S. 1 (1985) and *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court established the governing constitutional rule regarding excessive force.  In *Garner*, the Court held that the reasonableness of using deadly force to subdue a suspect turns on whether the "officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." 471 U.S. at 11.  And *Graham* held that excessive-force claims generally "are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." 490 U.S. at 388.

The relevant inquiry is whether the officers used more force than was reasonably necessary to make the arrest.  "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Factors to consider are (1) the severity of the crime, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to flee. *Id.*

These factors, focus primarily on analyzing the force used preceding physical

-7-

custody; however, this list is not all inclusive when the ultimate question is "whether the totality of the circumstances justifies a particular sort of seizure." *Id.* The court conducts a balancing test where it balances the nature of the intrusion on the arrestee's Fourth Amendment rights against the government's countervailing interests that are at stake. *Id.* The Sixth Circuit has stated that this standard "contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002).

Applying the above standard to the facts of this case results in questions of material fact concerning the reasonableness of Defendants' actions.

Viewing the facts in the light most favorable to Plaintiff and accepting his version of the facts as he fled, and the way the shooting occurred, the Plaintiff has raised genuine issues of material fact on his excessive force claim.

 "Only in rare instances may an officer seize a suspect by use of deadly force." *Sample v. Bailey*, 409 F.3d 689, 697 (6th Cir. 2005). These rare circumstances arise when the facts known to the officer at the time of the incident objectively give rise to probable cause to believe that the suspect poses a threat of serious physical harm to the officer or third persons. *Garner*, 471 U.S. at 11. Thus, while it is true that as a matter of law, an unarmed and nondangerous suspect has a constitutional right to be free from deadly force by police officers, whether a suspect is "nondangerous" is based on the facts known to the officer at the time of the incident, not on hindsight. *Floyd v. City of Detroit*, 518 F.3d 398, 407 (6th Cir.).

In this case, it is undisputed that Plaintiff turned away and ran up the driveway when he noticed the police approach. Officer Dorkins alleged he gave chase and after he

rounded the corner after Plaintiff, he observed a dark-colored gun in Plaintiff's hand. Dorkins contends that Plaintiff fired a gun at him and Dorkins heard the shot and saw the muzzle flash. Plaintiff, however, maintains that when he stopped running and turned to face Dorkins, he observed Dorkins with a gun pointed in his direction. Plaintiff asserts that he was clearly unarmed and raised his hands above his head and Dorkins fired the gun at him. Plaintiff says he heard the shot and saw the muzzle flash and in response, stated "don't shoot." Plaintiff contends Dorkins still held the gun directed at him and fearing for his life, Plaintiff turned and ran away. Plaintiff also states that the gun found on the other side of a six-foot fence did not contain his fingerprints and that his GPS tether shows that he never went in the direction of the fence as he fled from police.

Whether Defendants had probable cause to believe that Defendant Officers were in danger of serious harm turns, in large part, on the resolution of whether Plaintiff possessed a gun and fired a shot at Dorkins as alleged by Dorkins. Because Plaintiff has produced adequate evidentiary support for his version of events and because the Court must accept his version of the facts as true for the purposes of a Fed. R. Civ. P. Rule 56 motion, the Court concludes that material questions of fact exist that should be presented to a jury.

### b. Qualified Immunity: Were Defendants' Actions Unreasonable in Light of a Clearly Established Constitutional Right?

The second *Katz* inquiry is whether the right was clearly established and whether Defendants' actions were objectively unreasonable in light of that clearly established right. To put it another way, in light of the alleged  facts and viewing any factual disputes in the

light most favorable to Plaintiff, was Officer Dorkins's decision to fire at Plaintiff as he stood with his arms raised above his head objectively reasonable in light of a clearly established right to be free from deadly force? Here, this turns on whether (a) Dorkins actually did see Plaintiff possess and fire a gun and, (b) if so, whether that belief and the response thereafter was reasonable. If the answer to those two questions is "yes" even under Plaintiff's version of events, then Officer Dorkins is entitled to qualified immunity regardless of whether there was a constitutional violation. However, as in this case, absent an unequivocal affirmative response, the questions of qualified immunity as to Officer Dorkins must be left for a jury to decide.

As to the first question – whether Officer Dorkins actually saw Plaintiff with a gun – the factual dispute over this issue has been discussed above. Although Officer Dorkins states that he saw Plaintiff with a gun, heard the gunshot and saw the muzzle flash, in light of evidence presented by Plaintiff, "the court may not simply accept what may be a self-serving account by the police officer. It must look at the circumstantial evidence that, if believed, would tend to discredit the police officer's story . . . ." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994). In this case, Plaintiff's account and Officer Dorkins account of the events are divergent, at best. At this stage, it is not the Court's place to resolve these factual disputes.

Plaintiff concedes in his brief that Russell, Elinski and Hayes did not know who fired the first shot.  Therefore, it was reasonable for them to fire shots at Plaintiff.  It was reasonable for them to use deadly force since they stated they feared for their safety as well as the safety of others.

Therefore, on the excessive force claim alleged in Count I of the Complaint the Court

will DENY Summary Judgment as to Officer Dorkin, but GRANT Summary Judgment as to Officers Elinski, Russell and Hayes.

## Count II: §1983 Unlawful Search and Seizure

In this case the Pontiac police dispatch received a call that a bald, black male was standing in the driveway shooting a gun.  When the police officers arrived they saw Plaintiff who was in the driveway who fit that general description.  At that point they had adequate grounds to investigate Plaintiff.  However, once Plaintiff took off and fled up the driveway they had probable cause seize and arrest him.

Plaintiff alleges in his complaint that he was seized and searched without a warrant, without probable cause and without any other legal justification, in violation of the Fourth and Fourteenth Amendment to the United States Constitution.

To constitute an unreasonable seizure in violation of the 4th Amendment, an arrest must be made without probable cause.  Probable cause exist where there are "facts and circumstances within the officers knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense," *Crockett v. Cumberland College,* 3316 F.3d 571, 580-81 (6th Cir. 2003).

Plaintiff relies upon *Floyd v. Detroit,* 518 F.3d 398 (6th Cir. 2008) to argue that he was seized.  However, the Plaintiff in *Floyd,* was not a fleeing suspect, which is a significant distinguishing feature from the present case.  Plaintiff admits that when he saw the police vehicle, he feared being arrested for drinking on a tether and took off running, knowing the police were chasing him.

-11-

In *United States v. Jones,* 673 F.3d 497, 502 (6th Cir. 2012), the Court held that police pursuit is not a seizure until the suspects actually stops.  Here, it is unrefuted that Plaintiff  continued to flee from the officers until they lost sight of him and he was actually able to hide.

The court finds that there was probable cause to seize and arrest Plaintiff.

## a. Failure to Intervene by Defendant Officers

Plaintiff also claims in Count II that Defendant Officers violated his Fourth Amendment right to be free from excessive force when they failed to prevent other officers from the use of excessive force against Plaintiff. "[A] police officer who fails to act to prevent the use of excessive force may still be held liable where (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Floyd*, 518 F.2d at 406 (internal quotation marks omitted). However, officers cannot be held liable under this theory if the officers did not have a "realistic opportunity to intervene." *Ontha v. Rutherford Cnty., Tenn.*, 222 F. App'x 498, 507 (6th Cir. 2007).

The Court finds Defendants argument to have merit as to the claim of failure to intervene on the part of Defendant Officers' actions. Plaintiff contends that Defendant Officers shot at him multiple times without ever seeing him with a gun. He further argues that after the first shot was fired, other Defendant Officers arrived on the scene without assessing the situation with a shotgun unholstered and fired shots at Plaintiff. The court finds that based on the facts and circumstances in the case that the Defendants had neither the opportunity nor the means to prevent any harm from occurring.  Therefore, the

-12-

court finds as a matter of law that there was probable cause to seize and arrest Plaintiff and that the claim of a failure to intervene by other officers also fails as a matter of law. Accordingly, the court will GRANT Summary Judgment on Count II.

### Count IV: Due Process Claim
### Withholding Material Exculpatory Evidence

Plaintiff also makes a claim that Defendants withheld material exculpatory evidence in violation of the Fourth and Fourteenth Amendments. Plaintiff has not substantiated that such a claim is cognizable under either amendment in this case. To the extent that Plaintiff is attempting to allege a *Brady* violation, the United States Supreme Court has held to the extent that *Brady* imposes an obligation on the state to disclose exculpatory evidence to the defense, this duty falls on the prosecutor and not the police. *See Giglio v. United States*, 405 U.S. 150, 154 (1972); *Lindsey v. Bogle*, 92 F.App'x 165, 170 (6th Cir. 2004) (stating that "the *Brady* obligation applies only to prosecutors"); *see also Brady v. Maryland*, 373 U.S. 83 (1963).

In this case, Plaintiff is accusing Defendant Officers of withholding exculpatory evidence, this claim fails as a noncognizable claim against Defendant Officers. The failure to do particular tests on evidence does not by itself establish a due process violation. Therefore, the court will GRANT Summary Judgment as to Count IV of Plaintiff's Complaint.

### Count V: §1983 Conspiracy

Plaintiff claims that Defendant Officers conspired to violate his constitutional rights. Defendants argue that summary judgment is warranted because Plaintiff does not allege sufficient facts to support his claim.

Plaintiff's allegations in the complaint are not supported by evidence on the record

which, when viewed in a light most favorable to Plaintiff, would allow a reasonable juror to infer that Defendant Officers conspired to deprive Plaintiff of his constitutional rights by falsifying reports and giving false testimony.

To sustain a §1983 conspiracy claim, Plaintiff must show that "an agreement (existed) between two or more persons to injure another by unlawful action." *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007). More specifically, Plaintiff must prove that (1) a "single plan" existed, (2) Defendant Officers "shared in the general conspirational objective" to deprive Defendant of constitutional rights, and (3) "an overt act was committed in furtherance of the conspiracy that caused injury" to Plaintiff. *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985). "Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy [and] [e]ach conspirator need not have known all the details of the illegal plan or all of the participants involved." *Id.*

Overall, Plaintiff has failed to met the evidentiary requirements for a conspiracy claim and summary judgment is appropriate as to the Officers.

Additionally, Defendants assert that a §1983 conspiracy claim is barred by the intra-corporate conspiracy doctrine, which holds that an entity cannot conspire with its own agents or employees:

> 'It is basic in the law of conspiracy that you must have two person or entities to have a conspiracy. A corporation cannot conspire with itself nay more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.'

*Saad v. City of Dearborn Heights*, 876 F. Supp 2d 925, 941 (E.D. Mich. 2012) (quoting *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509 (6th Cir. 1991).

-14-

In this case, analogous to the officers employed by the city in *Saad*, it is undisputed that Defendant Officers were employed by the city of Pontiac and acting in their capacity as police officers. Because the city of Pontiac cannot conspire with its own agents, the intra-corporate conspiracy doctrine shields Pontiac from a conspiracy claim. Therefore, the intra-corporate conspiracy doctrine bars Plaintiff's conspiracy claim against the city of Pontiac.

Accordingly, as to the count V, the conspiracy claim, the will GRANT Summary Judgment.

### Count VI: §1983 Malicious Prosecution

Plaintiff's claim of malicious prosecution will not be dismissed on summary judgment. To succeed on a malicious prosecution claim under §1983 premised on a violation of the Fourth Amendment, Plaintiff must prove:

> First, . . . that a criminal prosecution was initiated against the plaintiff and that the defendant ma[d]e, influence[d], or participate[d] in the decision to prosecute. Second, because a §1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Sykes v Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010) (internal quotation marks and citations omitted).

"*Sykes* clarified that probable cause to arrest and probable cause to prosecute are

-15-

two distinct issues, each of which requires separate analyses by the court." *Amine v. King*, No. Case No. 09-13454, 2011 U.S. Dist, LEXIS 107424, at *11 (E.D. Mich. Sept. 21, 2011) (citations omitted). "[T]he malicious- prosecution tort remedies detention accompanied not by absence of legal process, but by wrongful institution of legal process." *Sykes*, 625 F.3d at 308 (internal quotation marks and citation omitted) (emphasis omitted).

With regard to the first element of a §1983 malicious prosecution claim that the Defendants made, influences, or participated in the decision to prosecute," the *Sykes* court opined that "participated" should be viewed in the context of tort causation principles. *Id.* "To be liable for 'participating' in the decision to prosecute, the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating." *Id.* at 309 n.5. The *Sykes* court further stated, "Whether an officer influenced or participated in the decision to prosecute hinges on the degree of the officer's involvement and the nature of the officer's actions . . . ." The totality of the circumstances informs this fact determination." *Id.* at 312 n.9.

In *Sykes*, an officer gave false testimony at the preliminary hearing. The court held that the officer made misrepresentations, participated, or influenced the decision to prosecute the plaintiffs. The plaintiffs brought a malicious-prosecution claim against the officer who testified at the preliminary hearing predicated on two misrepresentations that she made at the hearing that bound plaintiffs over for trial. The Sixth Circuit noted"

> It is well established in this circuit that [p]olice officers cannot, in good faith, rely on a judicial determination of probable cause [to absolve them of liability] when that determination was premised on an officer's own material misrepresentations to the court. This means that in order to establish that a testifying officer was responsible for commencing a criminal proceeding for purposes of a malicious-prosecution claim, the Plaintiffs were required to

present evidence that [the officer] (1) stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the [court's] finding of probable cause.

*Id.* at 312 (internal quotation marks and citations omitted).

The Sixth Circuit concluded that "a reasonable jury could have concluded that [the officer] testified falsely at the preliminary hearing and that her statements were material to the state court's finding of probable cause." *Id.*

Plaintiff argues that Defendant Officers participated and aided in the decision to prosecute in several ways. Plaintiff contends that Officer Dorkins misrepresented to other officers that Plaintiff had a gun, and that Plaintiff shot at Dorkins, and jumped a fence where the gun was located. Plaintiff maintains that Dorkins also told detective officers investigating the incident that Plaintiff threw the gun over the fence. Plaintiff states that Dorkins memorialized his untruths in his police report, while wrongfully categorizing the charge to Plaintiff as "assault with the intent to murder." Finally, similar to the testifying officer in the *Sykes* case, Plaintiff alleges that Dorkins lied at the preliminary examination by stating Plaintiff had a gun and shot at him.

Defendants argue that Plaintiff's claims that Defendants created false/inaccurate reports without any evidence of how they were false is not enough to support his contentions. Defendants further argue that even if there were false statements or material omissions, the court in *Sykes* opined that it "set aside the [false] statements and include the information omitted in order to determine whether the affidavit [in support of the arrest warrant] is still sufficient to establish probable cause." Dkt. # 45, pg. 24 (quoting *Sykes*, 625 F.3d at 306.)

In this case, a genuine issue of material fact remains with respect to the first element. During the preliminary hearing, Dorkins testified that Plaintiff had a gun and that Plaintiff shot the gun at him. Dorkins testimony was pivotal to the finding of probable cause. The judge stated that he found Officer Dorkins to be credible. Dkt. # 68-4, pg. 2. Plaintiff combats Defendants' argument by stating that Dorkins gave false testimony during the hearing for the purpose of establishing probable cause, a charge that is challenged by Defendants. Each party has presented sufficient evidence in the form of deposition and preliminary exam testimony to create a genuine issue of material fact, and whether Dorkins falsified his testimony is material to a determination of whether he participated in the decision to prosecute.

Likewise, a genuine issue of material fact remains with respect to the second element. It has already been established that Plaintiff was drinking alcohol, which, pursuant to his tether work release orders, was a violation that provided probable cause for his arrest. However, Plaintiff was prosecuted for assault with intent to murder, felonious assault, and felon in possession of a firearm – not for drinking alcohol while on a tether. *See* Dkt. No. 45-10, Exhibit I-Trial Transcript. The Court must determine whether probable cause existed to prosecute Plaintiff for the offenses with which he was charged. *Carter v. Porter*, Case No.5:08-CV-246, 2011 U.S. Dist. LEXIS 20911, at *25 n.13 (E.D. Ky. Mar. 1, 2011) (distinguishing between "'a simultaneous arrest on multiple charges where, in a sense the significance of the charges for which there was not probable cause for arrest is limited as the plaintiff in the ensuing civil action could have been lawfully arrested and thus seized on at least one charge and, on the other hand, prosecution for multiple charges where the additional charges for which probable cause is absent almost surely will place

-18-

an additional burden on the defendant.'" (quoting *Johnson v Knorr*, 477 F.3d 75, 84 (3d Cir. 2007))).

Although a judicial finding of probable cause ordinarily shields a law enforcement officer from a malicious prosecution claim, he "cannot, in good faith, rely on a judicial determination of probable cause [to absolve him of liability] when that determination was premised on an officer's own misrepresentations to the court." *Sykes*, 625 F.3d at 312. Here, as noted above, there remains a genuine issue of material fact regarding whether Defendant Officer Dorkins provided false testimony during the preliminary examination. Thus, neither party has succeeded in establishing this factor in their favor as a matter of law.

The third element has been met because, absent the initial seizure, Plaintiff suffered a "deprivation of liberty" as understood by the Fourth Amendment due to his subsequent arrest and 125 days spent in jail. Confinement imposed on an individual pursuant to the legal process is a deprivation of liberty. *Heck v. Humphrey*, 512 U.S. 477, 484 (1994).

Finally, the fourth element is met here because Plaintiff was acquitted of all charges by a jury. This decision was rendered on the merits and resolved the criminal proceeding in his favor. *See Heck*, 512 U.S. at 484 ("One element that must be alleged and proved in malicious prosecution action is termination of the prior criminal proceeding in favor of the accused.").

Therefore, because genuine issues of material fact exist as to the first two elements of the malicious prosecution claim as to Officer Dorkins, summary judgment cannot be granted as to him.  Accordingly, the court will DENY Summary Judgment as to Officer

-19-

Dorkins and GRANT it as to the other Defendants.

## Count VII: Malicious Prosecution (state claim)

Because the elements of malicious prosecution under state law are virtually identical to the elements under §1983 the court finds that the resolution of this issue is the same. Therefore, the court will DENY Summary judgment as to Officer Dorkins and GRANT it as to the other Defendants.

## Count VIII: Assault and Battery (state claim)

The claim in Count VIII of assault and battery requires proof of both components: that being an assault and a separate battery.  In this case the Plaintiff has failed to prove that a battery occurred.  A battery is the unlawful touching of the person of the Plaintiff or putting in motion something that unlawfully touches the Plaintiff.

In this case none of the bullets that were fired at the Plaintiff took effect or touched the Plaintiff and Plaintiff was not physically injured as a result of the shooting.  Therefore, no battery occurred and the court will GRANT Defendants Summary Judgment as to all Defendants.

## Count IX: False Arrest/False Imprisonment (state claim)

In it's discussions about Count II which claimed that there was a lack of probable cause to arrest, the court found that in fact there was probable cause to arrest the Plaintiff.

Because there was probable cause to arrest there can be no false arrest and consequently no false imprisonment.  Therefore, the court will accordingly GRANT Summary Judgment to all Defendants on Count IX the claim of false arrest/false imprisonment.

### Count X: Intentional Infliction of Emotional Distress (state claim)

Intentional infliction of emotional distress requires proof that the officers conduct was extreme and outrageous.  The evidence in this case does not rise to that level.  Moreover, the Michigan Supreme Court has not recognized this claim as a valid one under Michigan law.  Therefore, the court will GRANT summary judgment on Count X as to all Defendants.

### Count XI: Gross Negligence (state claim)

The evidence in this case supports some intentional actions on the part of the Officers involved.  However, the conduct and the evidence in the case when viewed in it's entirety does not support a gross negligence theory, therefore, the court will GRANT Summary Judgment on Count XI, the gross negligence claim.

### Count XII: *§1983 Municipal/Supervisory Liability*

In Plaintiff's §1983 claim against Pontiac, brought pursuant to *Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658 (1978), Plaintiff alleges Pontiac failed to train its officers consistent with the constitutional rights of citizens and failed to supervise and/or discipline officers that they knew or should have known to have violated a citizens' rights.

A Plaintiff who seeks to impose liability on a local government under §1983 must prove that action pursuant to official municipal "policy or custom" caused his injury. *Monell*, 436 U.S. at 691. Official municipal "policy or custom" includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. *Id.* The alleged policy or custom must be the "moving force of the constitutional violation." *Id.* at 694. This requires that the plaintiff (1) identify the policy or custom, (2) connect it to the municipality and (3) show that the execution of that policy or custom caused the plaintiff's injury. *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993).

"Failure to investigate complaints or discipline officers can give rise to §1983 liability." *Dyer v. Casey*, 72 F.3d 129; [Reported in Full-text format at: 1995 U.S. App. LEXIS 37042] *2 (6th Cir. 1995). To succeed on a claim for failure to supervise or discipline, the plaintiff must prove that: (1) the supervision or discipline was inadequate for the tasks the officer were performing; (2) the inadequacy resulted from the municipality's "deliberate indifference"; and (3) the inadequacy caused the injury. *Ellis v. Cleveland Municipal Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. Of County Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). Additionally, in the failure to discipline context, a plaintiff must show a "history of widespread abuse that has been ignored by the [municipality]." *Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir. 1994).

Here, the Plaintiff relies on broad, sweeping propositions that all the misconduct

alleged in the complaint are widespread practices of Pontiac. Plaintiff does not identify or specify the conduct, establish the connection with Pontiac, or show how Pontiac's execution of the policy harmed Plaintiff. *See Garner*, 8 F.3d at 364. The Plaintiff's asserted generalities do not establish a causal link between Pontiac's customs or polices that caused Plaintiff to be deprived of a constitutionally protected right. *Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985). Plaintiff does not demonstrate that Pontiac failed to or had a history of not supervising or disciplining the officers during the time frame that this incident occurred or any time before that. The proofs Plaintiff offers to support this claim are insufficient to present to the jury and city of Pontiac is entitled to summary judgment on Count XII, the *Monell* claim.

## IV. Conclusion

For the reasons stated above, IT IS HEREBY ORDERED that Defendants' motion for summary judgment [#45] is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that Summary Judgment is GRANTED as to Counts II, IV, V, VIII, IX, X, XI, XII.  (The Complaint did not contain a Count III)

IT IS FURTHER ORDERED that Summary Judgment is DENIED as to Officer Dorkins as to Count I, GRANTED as to the other Defendants.

IT IS FURTHER ORDERED that Summary Judgment is DENIED as to Count VI and Count VII as to Officer Dorkins, but GRANTED as to the other Officers.

SO ORDERED.

-23-

Dated: September 25, 2013                    /s/Gershwin A Drain
                                              GERSHWIN A. DRAIN
                                              United States District Court Judge